**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1531
_____

UNITED STATES OF AMERICA

v.

ALVIN HENRY,
                    Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 1:16-cr-26)
Honorable Wilma A. Lewis
_____

Submitted under Third Circuit L.A.R. 34.1(a)
December 11, 2020

Before: SMITH, *Chief Judge*, CHAGARES and MATEY, *Circuit Judges*

Filed January 19, 2021

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge.*

In this direct appeal, Defendant Alvin Henry challenges the District Court's denial of his motion to dismiss the indictment for prosecutorial misconduct. First, Henry argues that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), by failing to disclose impeachment-related evidence about Henry's cooperating co-defendant. Second, Henry contends that the Government's failure to preserve the luggage from which it seized the cocaine underlying his conviction denied him a fair trial under *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988).

The Government's work appears to have been slipshod, but Henry's appeal fails because there was no constitutional violation. Defense counsel impeached Henry's co-defendant after disclosure of the *Brady*/*Giglio* material and secured a favorable jury instruction. The exculpatory value of the luggage's contents was not apparent to law enforcement and could have been proved through other means, and there was no evidence of bad faith by the Government. At bottom, these and the Government's other failures stemmed from negligence and not willful misconduct. The District Court did not err in denying Henry's motion to dismiss, so we will affirm.

I.

On November 2, 2016, Customs & Border Protection (CBP) officers searched Henry's bags at the St. Croix airport while he waited in the departure lounge for a flight to Florida. They discovered bricks of cocaine in his luggage, and Henry was later indicted along with a co-defendant, Lamech Matthew, for conspiracy to possess and actual

possession of cocaine with intent to distribute, in violation of various provisions of 21 U.S.C. § 841. Matthew worked at the airport and facilitated the attempted drug trafficking; he signed a plea agreement with the Government in December 2018. On January 22, 2019, the lead Assistant U.S. Attorney (AUSA) notified Henry's counsel by email that "Matthew entered a plea late this afternoon with a supp. agreement to cooperate and testify against your client." A1179.[1] The AUSA stated that under Matthew's supplemental plea agreement, the Government would recommend a four-level reduction in Matthew's sentence if he testified against Henry. The AUSA did not provide a copy of it.

At Henry's jury trial, Matthew testified about his role in the conspiracy to traffic cocaine. Matthew stated that individuals for whom he had previously trafficked drugs pointed Henry out to him on November 1, 2016—the night before both men were arrested—and told him that Henry would retrieve the cocaine that Matthew would secret into the airport the following day. Matthew also testified that he had a plea agreement with the Government under which he expected sentencing benefits from his testimony but did not "have to call any names." A313. During his direct testimony, he identified only Henry.

On cross-examination, Matthew refused to answer certain of defense counsel's questions related to other individuals involved in the drug trafficking. It became clear that on top of his original plea agreement and the written supplement mentioned in the AUSA's January 2019 email, Matthew also had an oral cooperation agreement with the Government

---

[1] Citations are to Defendant-Appellant's Appendix ("A").

under which he could decline to provide information identifying anyone other than Henry.[2]

Neither a copy of the supplemental plea agreement nor the existence of the oral cooperation agreement was disclosed to the defense before trial. Defense counsel asserted that the Government had violated *Giglio* by withholding the agreements, as each provided impeachment evidence relevant to a critical witness's potential bias. Defense counsel also maintained that the identities of other co-conspirators were probative of Henry's innocence because she could call them as witnesses and adduce evidence that they did not know who Henry was.

The District Court adjourned trial for the day and heard from the parties on possible courses of action. Both the District Court and the Government were disinclined to hold Matthew in contempt for refusing to answer questions that could identify other members of the drug trafficking operation, given his reliance on agreements with the Government. The Government suggested that the Court either strike Matthew's testimony or declare a mistrial. Defense counsel proposed, without prejudice to her moving to dismiss the indictment for prosecutorial misconduct, that (1) Henry be permitted to introduce as substantive evidence one of Matthew's recorded post-arrest interviews with law enforcement—in which he named certain names and admitted that he had lied in a prior interview; (2) the Government be precluded from rebutting Matthew's statements in the

---

[2] The rationale for this unusual side agreement was that Matthew feared reprisals from members of the drug outfit. The AUSA believed that the identities of other participants were irrelevant to the two-person conspiracy charged in Henry's indictment.

4

interview; and (3) the jury be instructed on the Government's conduct in prosecuting Henry. The District Court chose this approach.

Trial resumed. Defense counsel cross-examined Matthew about his motive to curry favor with the Government and thereby benefit from the plea agreement and supplemental plea agreement. She also introduced the supplemental plea agreement as an exhibit. She then secured his refusal to answer questions about the identities of others involved in the drug trafficking operation and, to supplement his non-answers, played for the jury portions of Matthew's recorded interview with law enforcement. The AUSA and defense counsel ultimately agreed on a lengthy instruction, which the District Court read to the jury after Matthew's testimony. Among other things, the instruction stated that:

- the Government "had an obligation to disclose the supplement to the plea agreement to the defense" but did not do so before trial;

- the Government "also entered into an improper oral agreement" with Matthew by which he "was never required to provide any information that would reveal the identity of anyone other than Mr. Henry";

- the oral agreement too was not disclosed to the defense before trial;

- the individuals whose identities Matthew refused to disclose "had larger roles in the conspiracy" than Henry allegedly did;

- the Government's "tunnel vision in prosecuting Mr. Henry" led to the "unusual" arrangement whereby Matthew "did not have to comply with all the terms of the supplement to the plea agreement in order for the government to recommend" the four-level downward departure at Matthew's sentencing; and

- how the Government "handled" Matthew's testimony was "inconsistent with the regular course of business."

5

A644–46. This instruction also stated that the jury could consider Matthew's recorded statements as substantive evidence.

The Government's evidence, including Henry's own post-arrest interview with law enforcement, tended to show that Henry arrived in St. Croix with no intention of trafficking drugs but obliged when his cousin's friend asked him to transport some packages on his flight to Florida. In the portions of his interview played for the jury, Henry gave conflicting statements about whether he knew upon receiving the packages from Matthew that they contained cocaine.

After both sides rested, the District Court repeated the lengthy instruction regarding Matthew and then instructed the jury about Henry's luggage, which the Government had somehow lost after seizing the drugs. "The parties agree," the Court explained, "that there were various items in the bags that are not depicted" in the Government's photographs of the alleged cocaine bricks found in Henry's bags. A1006. The Court went on:

> Whether those ten packages were found in the bags is a fact for you to determine. . . . The parties also agree that the government had a duty to retain the two bags and all the items contained in those bags. The parties further agree that the government failed to retain those bags, and all the items contained in them. You may infer from the government's failure to retain this evidence that the evidence was favorable to Defendant Henry. You are not required [to] so infer, however, since you are the sole judges of the facts.

A1006–07.

During closing, defense counsel argued that Matthew was biased and untrustworthy because of: his recorded admission that he had lied in his prior interview; his multiple undisclosed agreements with the Government; and his need to testify in a way that the Government would consider truthful. Defense counsel also argued that Henry didn't learn

6

anything about the cocaine until Matthew delivered the packages to him in the airport; that the jury should infer that the contents of Henry's luggage would have exonerated him because they were those of a person taking a pleasure trip to Florida; and that Henry believed the packages contained only cash.

The jury found Henry guilty on both the conspiracy and possession counts. Henry then moved to dismiss the indictment, arguing that the Government violated *Brady* and *Giglio* by suppressing the supplemental plea and oral cooperation agreements.[3] The District Court denied Henry's motion and sentenced him to 48 months' imprisonment followed by a three-year term of supervised release. This appeal followed.

## II.

We have appellate jurisdiction under 28 U.S.C. § 1291. The District Court of the Virgin Islands had jurisdiction under 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We review the denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review over the District Court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

1. *No Brady/Giglio violation.* Under *Brady*, the Government's suppression "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Exculpatory evidence under *Brady* includes information that could be used to impeach a government witness. *Giglio*, 405 U.S. at 154.

---

[3] Before trial, the District Court denied Henry's separate motion to dismiss the indictment for prosecutorial misconduct arising out of the loss of his luggage and their contents.

7

The Government concedes that the supplemental plea agreement and the oral cooperation agreement were *Giglio* material. But Henry cannot show that he suffered prejudice from the Government's suppression of the evidence. *See Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 284–85 (3d Cir. 2016) (en banc) (noting prejudice requirement).

If the government makes *Brady* evidence available during trial so that the defendant is able to effectively use it, there is no prejudice—and thus no *Brady* violation. In *United States v. Johnson*, 816 F.2d 918 (3d Cir. 1987), our Court held that the Government did not violate *Brady* by failing to provide the defendant with exculpatory fingerprint reports before trial. *Id.* at 924. The defendant made extensive use of the reports at trial—including on cross-examination, by introducing the reports as evidence, and by arguing to the jury that the reports supported acquittal—and the District Court precluded the Government from presenting expert testimony about their significance to mitigate any potential unfairness. *Id.*

Likewise, Henry used the *Brady* material extensively at trial. His counsel received the supplemental plea agreement and learned of the contents of the oral agreement before cross-examining Matthew. Counsel then asked Matthew about the sentencing benefits he expected to receive under the supplemental plea agreement because of his testimony against Henry; made clear that Matthew was refusing to "name names" as a result of his oral agreement with the Government; introduced as substantive evidence Matthew's prior recorded interviews, in which he named certain names and admitted to previously being untruthful; and secured a favorable instruction read to the jury at the end of Matthew's cross-examination. Consistent with *Johnson*, the *Brady* material surfaced during trial and

8

Henry effectively used it for all its impeachment value.[4] *See also United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) (holding that due process is satisfied by disclosure of witness-credibility *Brady* material "the day that the witness testifies").

2. *No Trombetta/Youngblood violation.* To establish a due process violation based on law enforcement's failure to preserve potentially exculpatory evidence, a defendant must show: that the potentially exculpatory nature of the evidence was apparent at the time of destruction or loss, *Trombetta*, 467 U.S. at 489; the lack of "comparable evidence by other reasonably available means," *id.*; and that the government acted in "bad faith," *Youngblood*, 488 U.S. at 58. None of these requirements is satisfied here.

To begin with, the supposedly exculpatory nature of the evidence would not have been apparent to law enforcement at the time of the loss. Henry claims that the contents of his luggage would have shown that the purpose of his trip to Florida was pleasure, not to traffic drugs. But even so, the contents' exculpatory value would not have been readily apparent. That personal items redolent of a vacation may have been packed alongside bricks of cocaine does little to exculpate the owner of the luggage from a drug distribution conspiracy. The Government's evidence tended to show that Henry agreed to courier the

---

[4] The same lack of prejudice defeats Henry's cursory argument that the District Court should have dismissed the indictment under its supervisory authority. "[P]rejudice sufficient for the District Court to intervene in a proper prosecution based upon its inherent authority occurs only where the Government engages in actions that place a defendant at a disadvantage in addressing the charges." *United States v. Wright*, 913 F.3d 364, 372 (3d Cir. 2019). Because Henry suffered no prejudice, dismissal of the indictment under the District Court's supervisory powers would have been inappropriate. *See Gov't of V.I. v. Fahie*, 419 F.3d 249, 259 (3d Cir. 2005) ("[W]e do not expect that trial courts will dismiss cases under their supervisory powers that they could not dismiss under *Brady* itself.").

drugs at a late juncture—on the night before his already-booked flight. Indicia in his luggage of a pleasure trip to Florida jibes with that theory of the case.

What's more, Henry had other avenues to obtain comparable evidence. For example, Henry could have elicited the testimony of the officers who handled his luggage to prove the missing contents. The CBP agents who searched Henry's luggage were called as witnesses at trial, yet he declined to ask them about the contents of his bags. Henry's situation thus presents circumstances far different from those in which a defendant lacks comparable means of adducing the exculpatory value of lost or destroyed evidence. *See, e.g.*, *United States v. Elliott*, 83 F. Supp. 2d 637, 643–44 (E.D. Va. 1999) ("[T]here is no reasonably available alternative means of *ascertaining the chemical contents* of the residue which was observed in some of the [destroyed] glassware." (emphasis added)).

Nor does Henry offer evidence of bad faith. Unless a criminal defendant can show bad faith on the part of police, "failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood*, 488 U.S. at 58; *see also United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993). But Henry argues only that the Government's failure to preserve his luggage violated police procedures and, *ipso facto*, establishes bad faith. Precedent forecloses this argument. *See, e.g.*, *Youngblood*, 488 U.S. at 58; *Deaner*, 1 F.3d at 200–01; *United States v. Ramos*, 27 F.3d 65, 72 (3d Cir. 1994) (holding that destruction of evidence in violation of established rules and policy did not, alone, warrant finding of bad faith). Bad faith instead turns on "the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Griffin v. Spratt*, 969 F.2d 16, 20 (3d Cir. 1992) (quoting *Youngblood*, 488 U.S. at 51 n.*). Nothing suggests

10

anyone's knowledge that the personal items Henry claims were in his luggage and supposedly augured a pleasure trip to Florida had any tendency to exculpate him for conspiring to traffic drugs.[5]

\* \* \*

Finally, we reject Henry's contention, if advanced as an independent argument, that the District Court should have dismissed the indictment as a sanction for the Government's combined failures. Henry's prosecution—while far below the standard that we expect and the public should demand—did not include any "shocking, outrageous, and clearly intolerable" conduct that would warrant dismissal on "fundamental fairness" grounds. *United States v. Nolan-Cooper*, 155 F.3d 221, 230–31 (3d Cir. 1998) (quoting *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992)). Consider that, though the AUSA failed to provide Matthew's supplemental plea agreement to defense counsel before trial, he did contemporaneously email Henry's attorney the basic terms of the agreement.[6] Such

---

[5] At all events, the District Court's instruction permitted the jury to draw an inference favorable to Henry from the Government's failure to preserve the luggage, likely mitigating any unfairness.

[6] Henry identifies the Government's other missteps to try to trace a pattern of egregious misconduct. For example, the AUSA misinformed the Court that Matthew's testimony against Henry was untethered to his plea agreements, misidentified the date and status of Henry's written plea agreement, and failed at first to produce all correspondence relating to negotiations of the plea agreements. But the record suggests that these too were negligent mistakes, eventually corrected by counsel or remedied by the District Court. For instance, the Court ordered a full production of all correspondence relating to Matthew's plea and cooperation agreements. *See, e.g.*, *United States v. Kubini*, 19 F. Supp. 3d 579, 628 (W.D. Pa. 2014) ("[T]he appropriate remedy which results from the inconsistent information provided by the Government is simply to order the Government to produce any such materials rather than to order the extreme sanction of dismissal.").

conduct reflects a negligent misunderstanding of *Brady* and *Giglio* rather than the sort of "egregious" misconduct that justifies dismissal. *Id.*; *see also Fahie*, 419 F.3d at 249, 254–55 ("rare sanction" of dismissal requires willful government misconduct and prejudice to defendant); *United States v. Lakhani*, 480 F.3d 171, 180 (3d Cir. 2007) (dismissal not appropriate "each time the government acts deceptively," but "only in the face of the most intolerable government conduct").

## III.

To conclude, the Government did not violate *Giglio* because Henry made effective use of the withheld impeachment material at trial, and thus suffered no prejudice. And the failure to preserve the contents of Henry's luggage did not violate the Due Process Clause because their exculpatory value was not readily apparent, Henry had other avenues to adduce comparable evidence, and there was no bad faith on the part of law enforcement. These and other mistakes by the Government did not offend the Constitution, nor do they resemble the sort of willful misconduct that a dismissal remedy seeks to deter.[7] We will therefore affirm the District Court's denial of Henry's motion to dismiss.

---

[7] Our opinion should not be read to excuse the numerous failures that littered Henry's prosecution. The Government tells us that, in response to these mistakes, it has instituted a training program in the Virgin Islands to educate its AUSAs and local police on their *Brady* and evidence-preservation obligations. The issues in this appeal suggest that such training is indeed necessary, and we encourage the Government to implement any related programming it deems advisable.